[No. 59306-0.   En Banc.   June 17, 1993.]

WILLIAM VAN HOUT, *Petitioner*, v. CELOTEX CORPORATION, *Respondent*.

*Edwards, Sieh, Wiggins & Hathaway,* by *Charles K. Wiggins; Levinson, Friedman, Vhugen, Duggan & Bland,* by *Linda J. Dunn, Joel J. Delman,* and *Theodore R. Willhite,* for petitioner.

*Hillis Clark Martin & Peterson, P.S.*, by *Laurie Lootens Chyz* and *Lynne M. Cohee*, for respondent.

MADSEN, J. — We granted plaintiff's petition for review of a Court of Appeals unpublished decision. The Court of Appeals held there was sufficient evidence to go to the jury, but reversed and ordered a new trial for error in the jury instructions. Defendant cross-petitioned regarding sufficiency of the evidence. We affirm on the cross petition and reverse on plaintiff's petition, thereby reinstating the judgment rendered on the verdict in favor of the plaintiff.

This action arose as a result of William Van Hout's exposure to asbestos dust at the Puget Sound Naval Shipyard between 1946 and 1980. While not working directly with asbestos-containing products, he often worked in confined areas alongside others who were working with such products. Moreover, to do his own work, Van Hout sometimes had to remove asbestos insulation to get at machinery. In 1985, he was diagnosed as suffering from pleural thickening and asbestosis. That same year, Van Hout brought this suit against the Celotex Corporation (Celotex) and other former manufacturers of asbestos-containing products. By the time the case went to trial, Celotex was the only defendant. Celotex is the successor to Philip Carey Manufacturing Company, a corporation that manufactured asbestos-containing insulation materials.

Although plaintiff testified that he worked around asbestos, he could not identify the manufacturers of the asbestos products to which he had been exposed. Instead he relied on the testimony of co-workers who placed Philip Carey's products at the shipyard during the time Van Hout was employed.

Both parties agreed at trial that RCW 7.72, commonly known as the Washington products liability act (WPLA) governed the claim, and that the WPLA incorporated a negligence standard. The trial court instructed the jury accordingly.

The jury, in answer to a special verdict, found Celotex negligent and awarded Van Hout $500,000. Celotex appealed. It

argued that the evidence was insufficient to properly identify the product and that the jury instructions were improper because they imposed a greater duty than that imposed under the WPLA.

The Court of Appeals found that the evidence was sufficient to sustain the verdict. It also found that the trial court properly denied Celotex's motions for directed verdict, for judgment notwithstanding the verdict and for a new trial. The Court of Appeals reversed the trial court, however, on the basis of instructional error.

The issues presented to this court by Van Hout are (1) whether the instructional errors on which the Court of Appeals relied to reverse the jury verdict were properly preserved for appellate review, and (2) whether the Court of Appeals erred in deciding that the instructions read as a whole, including the special verdict, were misleading, erroneous and denied Celotex the opportunity to argue its theory of the case.

At trial, Celotex took exceptions to several of the instructions including instruction 7 (summary of claims), instruction 11 (duty to warn), and instruction 15 (duty to test). Defendant Celotex also took exception to the court's failure to give proposed instruction 5 (plaintiff's claims under the WPLA).

In its exception to instruction 7, Celotex stated,

> The Tort Reform Act [which incorporates the WPLA] applies in this case, and the Tort Reform Act consolidated various legal theories, including the negligence theory asserted by the plaintiff, into essentially a product liability claim. The duty imposed on the defendants is set out in the statute, and this instruction goes far beyond the duties that are set out in the statute, and therefore, is error.

Report of Proceedings (RP), at 867-68.

Celotex's exception to instruction 11 was similar.

> "[T]he instruction is not an accurate statement of the applicable law in this case. The limits of the manufacturer's duty are properly set forth in the statute, mainly RCW 7.72. This instruction goes far beyond the duties that are imposed in this statute, ...."

RP, at 869.

Again, in excepting to instruction 15 Celotex argued,

"[T]he statute now sets out the limits of a manufacturer's duty, including a balancing test and analysis done at the time of manufacture. And this instruction is erroneous. It's just plainly an incorrect interpretation, and I take exception at this time."

RP, at 870.

As noted earlier, both parties agreed at trial and in this appeal that they were trying the claim under the WPLA. The exceptions taken by Celotex stemmed from a disagreement between the parties and the judge as to the duties imposed on defendants by the WPLA. Celotex did not challenge the instructions at trial apart from its claim that they did not accurately reflect the WPLA. Celotex's appeal was also based on the WPLA. In its brief to the Court of Appeals, Celotex specifically stated that instructions 7, 11 and 15 "incorrectly imposed legal requirements beyond the specific legal duties delineated in RCW 7.72.030(1)(b)." Opening Brief of Appellant, at 16.

In reviewing these claimed instructional errors, the Court of Appeals first determined that the WPLA was not the applicable law in this case under *Koker v. Armstrong Cork, Inc.*, 60 Wn. App. 466, 804 P.2d 659, *review denied*, 117 Wn.2d 1006 (1991). In *Koker*, the Court of Appeals held that pre-WPLA law applies to claims arising before the effective date of the WPLA, which was July 26, 1981. *Koker*, at 470-72. Van Hout's asbestos exposure occurred prior to 1981. Based on this fact, the Court of Appeals held that Celotex was not entitled to an instruction based on the WPLA. It should be noted that Celotex does not challenge this holding by cross petition.

After concluding that Van Hout's claim was governed by pre-WPLA law, the Court of Appeals turned to Celotex's "remaining arguments". Celotex argued "that instructions 7, 11 and 15 effectively precluded it from arguing its theory of the case." *Van Hout v. Celotex Corp.*, cause 24238-5-I, slip op. at 13 (Feb. 3, 1992). The Court of Appeals agreed. The court determined that instructions 7, 11 and 15 imposed strict

liability for a manufacturer's failure to test its products and to provide adequate warnings. The Court of Appeals reasoned that this was error because Van Hout had elected to proceed on a theory of common law negligence. Since Celotex stipulated that it had conducted no tests and provided no warnings, the court reasoned that "the absolute duty to [test its products] imposed by instruction 15 was tantamount to a directed verdict in Van Hout's favor." *Van Hout*, slip op. at 15. The court reversed, concluding that the instructional errors were prejudicial.

Van Hout's position before this court is that there were no "remaining arguments" because Celotex never challenged the common law duties imposed by the instructions at trial. After reviewing the record, we agree. The trial court was never informed of those arguments. The directed verdict theory, on which the Court of Appeals based its decision to reverse, was raised for the first time in Celotex's opening brief. Even then, the argument was based on duties imposed by the WPLA, rather than duties imposed under the common law. Celotex simply never raised the "remaining arguments" relied on by the Court of Appeals to reverse the trial court.

An appellate court may dispose of an issue by applying a theory which was not precisely raised on appeal only if the trial court was adequately apprised of the party's position. *See Bennett v. Hardy,* 113 Wn.2d 912, 917, 784 P.2d 1258 (1990); *State v. Peterson*, 97 Wn.2d 864, 869, 651 P.2d 211 (1982). This is especially so when jury instructions are at issue. An appellate court may consider a claimed error in a jury instruction only if the appellant raised the specific issue by exception at trial. *Galvan v. Prosser Packers, Inc.*, 83 Wn.2d 690, 692, 521 P.2d 929 (1974); *Minert v. Harsco Corp.*, 26 Wn. App. 867, 872, 614 P.2d 686 (1980). As we stated in *Estate of Ryder v. Kelly-Springfield Tire Co.*, 91 Wn.2d 111, 114, 587 P.2d 160, 16 A.L.R.4th 129 (1978):

> The cognizance we take on appeal of alleged erroneous instruction in the trial court depends upon the action appellant

took in that court. The trial court must have been sufficiently apprised of any alleged error to have been afforded an opportunity to correct the matter if that was necessary. CR 51(f). In *Nelson v. Mueller*, 85 Wn.2d 234, 238, 533 P.2d 383 (1975), we quoted from *Roumel v. Fude*, 62 Wn.2d 397, 399-400, 383 P.2d 283 (1963), as follows:

> Our rules require that exceptions to instructions shall specify the paragraphs or particular parts of the charge excepted to and shall be sufficiently specific to apprise the trial judge of the *points of law* or question of fact in dispute. The purpose is *to enable the trial court to correct any mistakes in the instructions in time to prevent the unnecessary expense of a second trial.*

*See also Egede-Nissen v. Crystal Mt., Inc.*, 93 Wn.2d 127, 134, 606 P.2d 1214 (1980).

In this instance, the trial court, along with counsel for Celotex and Van Hout, attempted to fashion instructions which would accurately reflect the standards of the WPLA. The parties never discussed whether the court's instructions were an accurate statement of the manufacturer's duties under pre-WPLA law. It is unreasonable to suggest that the exceptions taken by Celotex were adequate to apprise the trial court that its instructions erroneously described the manufacturer's duties under pre-WPLA common law theories. *See Bennett*. At most, Celotex informed the trial judge that its view of what negligence meant in context of the WPLA differed from the court's interpretation.

We find that the Court of Appeals erred in reversing on a theory never presented to the trial court. Celotex limited its challenges to the instructions to WPLA claims. Appellate review of the instructions should have ended once the Court of Appeals decided that the WPLA did not govern the challenges.

In his next claim, Van Hout asserts that, even under pre-WPLA law, the instructions properly apprised the jury of Celotex's duties. Specifically, Van Hout challenges the Court of Appeals' conclusion that the instructions, when read as a whole, erroneously described the defendant's duties to test and warn under pre-WPLA law. While our holding does not require us to consider this, since the parties argue the point at length, we will briefly address the issue.

As noted earlier, the Court of Appeals determined that instructions 7, 11 and 15 imposed strict liability for failure to test and failure to warn. The court went on to state that strict liability instructions were incompatible with a negligence claim and thus the instructions as a whole were materially inconsistent regarding the duty owed by Celotex to its users. It concluded that the instructions were prejudicial and constituted reversible error because it would be impossible to determine the effect of the erroneous strict liability instructions on the jury verdict.

Prior to adoption of the WPLA, case law in Washington imposed a duty of strict liability on a manufacturer to give adequate warnings. *Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 478-79, 573 P.2d 785, 93 A.L.R.3d 86 (1978); *Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 154-55, 570 P.2d 438 (1977); *Haugen v. Minnesota Mining & Mfg. Co.*, 15 Wn. App. 379, 387, 550 P.2d 71 (1976).

In determining the scope of the duty to warn, pre-WPLA case law also established a duty of ordinary care on manufacturers to test their products, as the Court of Appeals stated:

> For cases tried under theories of common law negligence we believe the law supports the existence of a duty of a manufacturer to use ordinary care to test, analyze, and inspect its products. We also hold the law establishes a duty by a manufacturer to use ordinary care to keep abreast of scientific knowledge, advances, and research in its product field.

*Koker*, 60 Wn. App. at 479. Prior to the WPLA, courts commonly instructed the jury on both negligence and strict liability theories. The instructions given in the present case are very similar to those approved by this court in an earlier asbestos case, *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 267-69, 744 P.2d 605 (1987). Lockwood, like Van Hout, sought damages from manufacturers of asbestos products. Lockwood's claims for failure to test and failure to warn proceeded on instructions which combined theories of negligence and strict liability. This court approved these instruc-

tions which presented both theories as alternate grounds supporting recovery. Accordingly, Van Hout would have been free to pursue his warning claim under a theory of strict liability and at the same time present his failure to test claim under a negligence theory.

Although case law would have supported a combined approach, after reading the instructions given in this case we must conclude that Van Hout's claims for failure to warn and to test went to the jury solely on a negligence theory. Instruction 7, Van Hout's claims summary, described Celotex's failure to test and failure to warn as negligent. Instruction 8 defined the plaintiff's burden as one of establishing negligence. Instruction 9 defined negligence. Instruction 10 required the plaintiff to prove that negligence was a proximate cause of his injury. Instruction 12 defined the liability of a manufacturer for negligent failure to warn. Instruction 22 referred to negligence in reducing life expectancy. The special verdict form asked jurors to decide whether negligence was the proximate cause of Van Hout's injury. In addition, the jury was allowed to consider industry standards in determining the reasonableness of Celotex's actions.

This court has found reversible error where a trial court instructed a jury solely on negligence but strict liability was also a relevant theory of recovery. *Little v. PPG Indus., Inc.*, 92 Wn.2d 118, 594 P.2d 911 (1979). In *Little*, this court reversed a judgment entered on a defense verdict in a product warning case where the trial court isolated negligence as the sole issue for the jury. While one instruction correctly described the manufacturer's duty to warn as one of strict liability, the remaining instructions went on to state that the plaintiff's claim was one of negligence and that negligence was the proximate cause of death. *Little*, at 125. The jury was also given interrogatories which asked only whether the defendant was negligent. This court concluded that the instructions effectively removed strict liability from the jury's consideration to the plaintiff's prejudice, thus requiring a new trial for the plaintiff. *Little*, at 125-26.

We find *Little* applicable and find that the instructions given in this case likewise removed strict liability from the jury's consideration. If any prejudice resulted from the instructions given here, it was the plaintiff who was disadvantaged. These instructions, based solely on negligence, required him to shoulder a more difficult burden than the law necessarily demanded. Having prevailed on the more difficult burden, we give Van Hout the benefit of his verdict.

The final issue in this appeal is presented by Celotex in its cross petition. The defendant asks that we reverse the Court of Appeals' finding that the evidence was sufficient. Celotex contends that Van Hout failed to establish that exposure to the defendant's products caused his injury and argues that the trial court should have either directed a verdict, entered a judgment notwithstanding the verdict, or granted Celotex a new trial on this basis.

On a directed verdict or judgment notwithstanding the verdict, the court must view the evidence and resolve all inferences and questions of fact in the nonmoving party's favor. *Lockwood*, at 243; *see also Levy v. North Am. Co. for Life & Health Ins.*, 90 Wn.2d 846, 851, 586 P.2d 845 (1978). Such motions are appropriate only where no reasonable inference can be drawn from the evidence to sustain a verdict in favor of the nonmoving party. *Lockwood*, at 243; *Levy*, at 851.

Plaintiffs in asbestos cases may rely on circumstantial evidence that the manufacturer's products were the source of their asbestos exposure. *O'Brien v. National Gypsum Co.*, 944 F.2d 69, 72 (2d Cir. 1991); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1286-87 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990). In *O'Brien*, the plaintiff died of asbestos-related illnesses. The trial court not only relied on hearsay to place the defendant's products at the shipyard where the plaintiff was working but also relied on hearsay to place the plaintiff amid the unidentified asbestos dust. *O'Brien*, at 72. The United States Court of Appeals for the Second Circuit held that the evidence was, nevertheless, sufficient. *O'Brien*, at 72.

In this case, Van Hout personally testified that he was on ships working in asbestos dust. He relied on witnesses only to place Celotex's (then Philip Carey's) products on the ships that Van Hout was working on. It appears, therefore, that the Court of Appeals correctly noted that the evidence submitted in this case is stronger than that present in similar cases. The Court of Appeals was correct when it held that the trial court properly denied Celotex's motions for a directed verdict and a judgment notwithstanding the verdict. We agree with the Court of Appeals' finding that the evidence was sufficient to support the jury verdict. We reverse the Court of Appeals, however, for the reasons stated earlier, and reinstate the trial court's judgment rendered on the jury verdict.

UTTER, BRACHTENBACH, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

ANDERSEN, C.J., concurs in the result.