[No. 34441-2-I. Division One. September 22, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. JOANNE ELIZABETH PITTMAN, *Appellant*.

*Eric J. Nielsen* and *Lindsay Brown* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine, Deputy*, for respondent.

KENNEDY, J. — Joanne Pittman appeals her conviction of one count of possession of a controlled substance with intent to manufacture or deliver, arguing that the trial court erred in giving an instruction that incorrectly set forth the elements of the defense of medical necessity and in excluding, for lack of an adequate foundation, the testimony of a defense expert regarding the use of marijuana in treating cancer.[1] Finding no error, we affirm.

## FACTS

In November of 1992, the Snohomish County Sheriff's Office executed a search warrant for Joanne Pittman's residence. Upon executing the search warrant, the police discovered a small marijuana grow operation at Pittman's residence. The State charged her with one count of possession of a controlled substance with intent to manufacture or deliver.

Pittman's jury trial began on February 22, 1994. During opening statements, defense counsel conceded that Pittman was in possession of and manufactured marijuana, but asked the jury to find her not guilty at the conclusion of the trial, based on the defense of medical necessity.

Pittman testified that she became acquainted with Donald Inman in 1989. Sometime in 1989 or 1990, Inman complained to Pittman, who is a chiropractor, that he was experiencing pain in his left eye and loss of vision. Pitt-

---

[1]Pittman's remaining contention is treated in the unpublished portion of this opinion. Our disposition of the appeal makes it unnecessary for us to reach the State's cross-appeal requesting that this court reject the medical necessity defense in marijuana cases as a matter of law.

man suggested that Inman visit an ophthalmologist. Inman followed her advice and sought treatment from Dr. Hugh Minor, who diagnosed him with late-stage, severe glaucoma. Dr. Minor testified that when he began treating Inman, Inman's "vision was nearly gone." Given the nature of Inman's glaucoma, standard surgical procedures were not an option and treatment was very "difficult." Although Dr. Minor prescribed various medications in an attempt to treat Inman's glaucoma, none proved effective and Dr. Minor eventually told Inman that he "simply didn't have anything to offer him more than what [they] had tried."

Inman testified that following his last visit with Dr. Minor, he "gave up on the M.D. and tried to seek [his] own solution to [his] problem." Upon the suggestion of Pittman and others, Inman turned to marijuana for treatment. He first tried making tea with marijuana leaves, and found that it had a numbing effect on his eye and alleviated some of the pain, which had become almost totally debilitating. Inman noticed that when he stopped using marijuana, the pain would return. He thus decided that he would have to use marijuana regularly, and when he had difficulty maintaining a steady supply, he asked Pittman to grow marijuana plants for him. She agreed.

Pittman testified that she was familiar with the medicinal uses of marijuana because she had used it herself in treating her cervical cancer. According to Pittman, marijuana stimulated her appetite, helping her maintain her proper weight and immune function. Pittman testified, however, that she did not grow marijuana for her own use, and that every plant growing at her house was intended for Inman.

In support of her defense of medical necessity, Pittman also presented the testimony of Robert Randall. Mr. Randall is a writer who cofounded the Alliance For Cannabis Therapeutics, a Washington patient-rights group. Mr. Randall testified before the jury that he has used marijuana legally since 1973 to treat his own glaucoma. He further

testified that he has participated in several studies examining the effects of various glaucoma treatments, including marijuana, and has written six books on the medical uses of marijuana.

In an offer of proof, the defense also sought to admit Mr. Randall's testimony that marijuana is useful in treating cancer because it stimulates the appetite and helps cancer patients maintain weight and thus the ability to fight infection. Mr. Randall cited a study that concluded that "marijuana helps anorexics eat." He stated:

> But, clearly, if marijuana is capable of making an anorexic hungry it's capable of making a person with cancer hungry or a person with AIDS hungry. I think almost everyone over the age of 15 in this society knows that marijuana makes you hungry. It causes the munchies. If you are dying from starving to death, the munchies can be critical.

The trial court, however, rejected the defense offer of proof for lack of an adequate foundation. It ruled:

> Finally, on the issue of the use of marijuana for cancer, I have not heard adequate foundation to allow that testimony into evidence. There are so many variables regarding the type of cancer and the kind of treatment that is being used under traditional prescriptions that no generalized conclusions can be reached by Mr. Randall or probably by any other expert. Mr. Randall finally boiled his testimony down to saying that if marijuana makes you hungry then it must intuitively be good for cancer and I suppose any other disease known to man. I don't find that's appropriate testimony from an expert witness. It's — it doesn't meet the threshold tests of either Evidence Rule 701 or 702.

At the conclusion of trial, over the State's objection, the trial court held that the jury was entitled to consider the defense of medical necessity as it related to the use of marijuana to treat Inman's glaucoma. But because the defense failed to present expert testimony regarding the use of marijuana to treat cancer, the court held that the record did not support the necessity defense as it related

to Pittman's personal use of marijuana. The court thus instructed the jury as to the elements of the medical necessity defense as it related to the treatment of Inman's glaucoma, but stated in the instruction that Pittman's personal use of marijuana was insufficient to support the defense of medical necessity as a matter of law.

Following deliberations, the jury convicted Pittman as charged. The court sentenced her within the standard range, and this timely appeal followed.

## DISCUSSION

### I. Instruction on Defense of Medical Necessity

At the conclusion of trial, Pittman proposed the following instruction on the defense of medical necessity:

> It is a defense to a charge of possession with intent to manufacture or deliver marijuana that the defendant acted out of "medical necessity."
>
> Medical necessity exits in this case if:
>
> (1) the defendant reasonably believed the manufacture or delivery of marijuana was necessary to minimize the effects of glaucoma;
>
> (2) the benefits derived from marijuana in the treatment of glaucoma are greater than the harm sought to be prevented by the controlled substances law; and
>
> (3) *no drug is as effective as marijuana in minimizing the effects of glaucoma.*

(Emphasis added). The trial court disagreed with subsection (3) of Pittman's proposed instruction, and instead gave the following instruction to the jury:

> It is a defense to a charge of possession with intent to manufacture or deliver marijuana that the defendant acted out of "medical necessity.". . .
>
> The defendant has the burden of proving each of the following elements of the defense of medical necessity by a preponderance of the evidence:

(1) That the defendant reasonably believed that her manufacture or delivery of marijuana was medically necessary to minimize the effects of Donald Inman's glaucoma;

(2) That the defendant had no other reason, purpose or motivation, whatsoever, to manufacture or deliver the marijuana which was found in her possession on November 4, 1992;

(the defendant's use of marijuana herself, even for purposes of stimulating her appetite as a means of combating cancer, is not sufficient, as a matter of law, to support a defense of medical necessity in this case);

(3) That the benefits derived from the use of marijuana in the treatment of Mr. Inman's glaucoma are greater than the harm sought to be prevented by the law prohibiting the manufacture or delivery of controlled substances; and

(4) *That no legal alternative is available which is as effective as marijuana in minimizing the effects of Mr. Inman's glaucoma.*

(Emphasis added).

 Pittman objected to the trial court's instruction, and now challenges the instruction on appeal. Jury instructions are sufficient if they permit counsel to argue his or her theory of the case, are not misleading, and, when read as a whole, properly inform the trier of fact of the applicable law. *State v. Aver*, 109 Wn.2d 303, 309, 745 P.2d 479 (1987); *City of Mount Vernon v. Quezada-Avila*, 77 Wn. App. 663, 668, 893 P.2d 659 (1995). Pittman argues that because it included the requirement that "no legal alternative" be available which is as effective as marijuana in minimizing the effects of glaucoma, the trial court's medical necessity instruction denied her the opportunity to effectively argue her theory of the case, and incorrectly set forth the elements of the defense. Citing *State v. Diana*, 24 Wn. App. 908, 604 P.2d 1312 (1979), Pittman argues that the instruction should only have required that "no drug" be available which is as effective as marijuana. Pittman contends that the court's instruction allowed the

prosecutor to argue to the jury that Inman did have a legal alternative to the use of marijuana to relieve the pain of glaucoma, the surgical removal of his left eye. The prosecutor made that argument to the jury in this case. Pittman asks this court to rule as a matter of law that the medical necessity defense is not so narrow as to require surgical removal of an organ to relieve pain as a legal alternative to the use of marijuana; thus, Pittman contends, under *Diana*, the trial court should have given the instruction proposed by the defense, which limits the legal alternatives to medically prescribed drug treatment.

In *Diana*, the appellate court adopted the defense of medical necessity. In that case, the defendant was convicted of possession of a controlled substance. On appeal, he requested that the court remand the case for a determination of whether his use of marijuana was medically necessary, thereby justifying his possession. The court granted his request. As Pittman correctly points out, the court summarized that upon remand, the defense of medical necessity would exist if the trial court found that:

> (1) the defendant reasonably believed his use of marijuana was necessary to minimize the effects of multiple sclerosis; (2) the benefits derived from its use are greater than the harm sought to be prevented by the controlled substances law; and (3) *no drug is as effective in minimizing the effects of the disease.*

*Diana*, 24 Wn. App. at 916 (emphasis added).

The *Diana* court's holding, however, does not end at that point. Although Pittman does not mention it in her brief, the court expressly held that in making its determination as to whether the medical necessity defense existed, the trial court was to refer to the authorities "cited in this opinion." *Diana*, 24 Wn. App. at 916. Earlier in its opinion, the court cited the HANDBOOK ON CRIMINAL LAW for the proposition that the defense of necessity is not applicable when a legal alternative is available to the accused. *Di-*

*ana*, 24 Wn. App. at 913 (citing WAYNE R. LaFAVE & AUSTIN W. SCOTT, HANDBOOK ON CRIMINAL LAW § 50 at 381-83, 386 (1972)). Thus, although not expressly included in its "summary" of the elements of the medical necessity defense, the absence of a legal alternative is nonetheless an implicit element of the defense as articulated in *Diana. See also State v. Gallegos*, 73 Wn. App. 644, 651, 871 P.2d 621 (1994) (paraphrasing the holding in *Diana* as requiring that "no legal alternative existed.").

■ Not only is the requirement consistent with existing Washington case law, it is mandated by common sense. By definition, the necessity defense exists " 'when the physical forces of nature or the pressure of circumstances cause the accused to take unlawful action to avoid a harm which social policy deems greater than the harm resulting from a violation of the law.' " *Gallegos*, 73 Wn. App. at 650 (quoting *Diana*, 24 Wn. App. at 913-14). If defendants were not required to prove the absence of a legal alternative that is as effective as marijuana, they could engage in "protected" unlawful conduct with no necessity to do so, i.e., when a lawful alternative exists that indeed is as effective in the relief of the medical condition as is the use of marijuana.

This is not to say that we approve of the prosecutor's argument that Inman had a legal alternative to the use of marijuana, the surgical removal of his eye. Dr. Minor testified that Inman was not a candidate for standard surgical treatment for glaucoma, but did not testify that surgical removal of an eye is among the standard surgical procedures for that condition. To the extent that surgical removal of an eye may be among the standard surgical procedures for the relief of the pain of glaucoma, it is clear from Dr. Minor's testimony that Inman was not a candidate for that procedure. Thus, the prosecutor's argument was not supported by the evidence at the trial. But the defense did not object to the prosecutor's argument at trial, and Pittman does not assign error to the argument on appeal. Instead, she takes the position that the argu-

ment was appropriate under the court's instruction, and that the instruction was erroneous because it allowed the prosecutor to make the argument. We disagree. The trial court's instruction correctly stated the law as articulated in *Diana* and *Gallegos*. Moreover, nothing in the instruction prevented the defense from pointing out to the jury that the medical evidence at trial did not show that surgical removal of an eye is a standard surgical procedure to relieve the pain of glaucoma and even if it is, Dr. Minor testified that Inman was not a candidate for standard surgical procedures. The failure of the defense to make this argument is not a basis for finding error in the court's instruction.[2]

## II. Exclusion of Expert Testimony

Pittman contends that the trial court abused its discretion in excluding Mr. Randall's testimony that marijuana is beneficial in the treatment of cancer, arguing that Mr. Randall "certainly possessed enough practical experience to qualify him as an expert" on the issue. The State responds that the trial court properly excluded that portion of Mr. Randall's testimony because it was "completely unsupported by scientific evidence."

The admission or exclusion of expert testimony under Evidence Rule 702 is within the discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of that discretion. *Walker v. State*, 121 Wn.2d 214, 218, 848 P.2d 721 (1993); *State v. Mak*, 105

---

[2]This case touches on an additional issue which the parties have not addressed in their briefs, and which we do not reach: To whom must the legal alternative have been available, Inman or Pittman? Only Inman could decide whether to submit to surgery, if he had been a candidate for standard surgical treatment. But Pittman was the person charged. If the legal alternative must have been available to the person charged with possession or manufacture of marijuana with intent to deliver to another person who suffers from a medical condition that can be relieved either by standard surgical procedures or by the use of marijuana, and that person refuses surgery, it is unclear whether the medical necessity defense is available to the person charged. We leave the resolution of this issue for another case in which the question is squarely presented. Here, Inman was not a candidate for surgery in any event.

Wn.2d 692, 715, 718 P.2d 407, *cert. denied,* 479 U.S. 995 (1986). Under ER 703, expert testimony must be based on sufficient foundational facts to support the expert's opinion. *Walker,* 121 Wn.2d at 218. "It is well established that conclusory or speculative expert opinions lacking an adequate foundation will not be admitted." *Safeco Ins. Co. v. McGrath,* 63 Wn. App. 170, 177, 817 P.2d 861 (1991).

In the present case, Pittman sought to introduce Mr. Randall's testimony that marijuana is useful in the treatment of cancer because it stimulates the appetite and helps cancer patients maintain weight and thus the ability to fight infection. Mr. Randall's testimony was based on the proposition that "if marijuana is capable of making an anorexic hungry it's capable of making a person with cancer hungry or a person with AIDS hungry." Although Mr. Randall did cite a study that concluded that marijuana stimulates the appetites of those suffering from anorexia nervosa, he cited no studies or other scientific evidence in support of his conclusion that marijuana must also stimulate the appetite of a cancer patient. The only basis for his conclusion was his opinion that: "I think almost everyone over the age of 15 in this society knows that marijuana makes you hungry."

On this record, we conclude that Mr. Randall's opinion that marijuana is beneficial in the treatment of cancer was based on nothing more than pure speculation. Although Pittman properly points out that Mr. Randall has a considerable amount of practical experience concerning the medical uses of marijuana, his practical experience does not obviate the need for a scientific basis for his opinion. In the absence of a scientific basis, Mr. Randall's opinion lacked an adequate foundation and was properly excluded by the trial court. *See McGrath,* 63 Wn. App. at 178 (holding that trial court abused its discretion in admitting alcoholism expert's opinion that the insured's mental capacity was so impaired at the time of the shooting that he could not form intent to injure; opinion lacked an adequate foundation when there was no scientific basis

regarding the effects of intoxication on mental capacity to form intent to injure).

Moreover, any error in the trial court's evidentiary ruling was harmless in light of Pittman's testimony that none of the marijuana found in her house was for her own use; it was all for Inman. Pittman so testified before the offer of proof with respect to the use of marijuana for the treatment of cancer, effectively removing the medical necessity defense from issue at the trial, with respect to her own medical condition of cervical cancer.

We affirm the conviction.

A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it is so ordered.

BAKER, C.J., and WEBSTER, J., concur.